ORIGINAL

2006 SEP 27 PM 1:27

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE CHRISTINA A. SNYDER, JUDGE PRESIDING

UNITED STATES OF AMERICA,
                    Plaintiff,
    vs.
                                        CR-02-3-CAS-1
KHALIL MOHAMMED, et al.,
                    Defendants.

------------------------------


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

March 24, 2005


SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

2006

BY

2814

1   APPEARANCES OF COUNSEL:

2   For the Plaintiff:

3   DEBRA W. YANG
    United States Attorney
4   STEVEN D. CLYMER
    Special Assistant United States Attorney
5   Chief, Criminal Division
    MICHAEL J. STERN
6   CHRISTOPHER BRUNWIN
    Assistant United States Attorneys
7   312 North Spring Street
    Los Angeles, CA  90012

8

9   For Defendant SAID ABDELAZIZ:

10  DAVID J.P. KALOYANIDES
    DAVID J.P. KALOYANIDES LAW OFFICES
11  One Wilshire Building
    624 South Grand Avenue, Suite 2200
12  Los Angeles, CA  90017-3323

13  For Defendant RASHEED AZIZ:

14  GEORGE BUELLER

15

16  ALSO PRESENT:

17  Arabic Interpreter

18

19

20

21

22

23

24

25

1    SANTA ANA, CALIFORNIA; MARCH 24, 2005; P.M. SESSION

2          THE CLERK:  Calling Case No. CR-02-3-CAS,

3    United States of America versus Rasheed Aziz, et al.

4          Counsel, please state your appearances.

5          MR. STERN:  Michael Stern and Christopher Brunwin

6    on behalf of the United States.

7          MR. KALOYANIDES:  David Kaloyanides for defendant

8    Said Abdelaziz who is present.

9          MR. BUELLER:  George Bueller for defendant Rasheed

10    Aziz who is present.

11          THE COURT:  We have as you know a further note, and

12    I think at this stage I am going to bring them down.

13    "Hopelessly deadlocked" suggests to me they should be

14    discharged.

15          THE CLERK:  We got another note.  I am going to

16    make copies.

17          MR. STERN:  Would you like our response?

18          THE COURT:  Yes.

19          MR. STERN:  Well, it looks like several of the

20    jurors are apparently having a problem with one of the

21    jurors.  I think the appropriate thing to do if this is

22    perhaps causing the deadlock and has something to do with

23    the standard deliberations is inquire of those jurors what

24    the problem is.  If it's something like the juror is sitting

25    and reading a fashion magazine and refusing to deliberate or

1  receiving outside information or a variety of other things,

2  that's something the Court should consider in trying to

3  create a remedy.

4  THE COURT:  Let me say this.  I am going to have

5  the foreperson come down and speak to all of us, but I am

6  not going to I think under any set of circumstances dismiss

7  a juror.  I cannot conceive of a circumstance under which I

8  would dismiss a juror.  I know other judges have done it,

9  but I don't think it's appropriate, so let me start with

10  that.

11  MR. STERN:  I don't agree that jurors cannot be

12  dismissed because the statute --

13  THE COURT:  They can in very care circumstances.

14  MR. STERN:  We have no idea what those

15  circumstances are.  I think we should first find out the

16  circumstances and go from there.  It seems to make the most

17  sense.

18  MR. KALOYANIDES:  I am a bit puzzled by the note

19  coming after now our third deadlock in the case.

20  THE COURT:  I understand.

21  MR. KALOYANIDES:  I am also puzzled it's signed by

22  someone other than the foreperson.

23  THE COURT:  That happens all the time.

24  MR. KALOYANIDES:  Then that may not be an issue.

25  The fact that this is coming up at this point after --

1    again, a third note of a deadlock -- I don't know that we

2    can necessarily assume that that is part of the deadlock.  I

3    am not sure that it would be appropriate under these

4    circumstances to make any inquiry regarding the problem

5    before addressing the fact that they have voted -- are

6    deadlocked for the third time now.

7         MR. STERN:  Obviously, if the juror was having some

8    type of discussion externally -- obviously, we don't know

9    the extent of it, but I don't think we can ignore this.  We

10   need to find out what is going on.  Only from that point can

11   we address it.  It may be that it doesn't change the

12   ultimate outcome.

13        THE COURT:  I think we have to hear from the

14   foreperson.  I don't think it's going to change my views

15   that the jury is hopelessly deadlocked if for no other

16   reason because these people have been trying to do something

17   over several days.  If he says he would really like to talk,

18   if possible, I think I owe it to him.

19        MR. STERN:  I agree a six-week trial -- if it comes

20   to a deadlock, it comes to a deadlock.  To the extent they

21   are telling us there is a problem, I think we should address

22   it.

23        THE COURT:  I think we should tell Mr. Bennett to

24   come down.

25        MR. KALOYANIDES:  I was going to say I would

1    probably object to addressing this issue in front of the

2    whole panel.

3            THE COURT:  I think he should come down alone.  His

4    note is he would like to talk to us.  Then we will see what

5    to do next.

6            MR. STERN:  It's signed by two people, the

7    foreperson --

8            THE COURT:  I am not going to bring another juror

9    down here.  I don't want to start bringing others down when

10   the foreperson can apparently speak for everybody.

11           MR. KALOYANIDES:  Thank you, Your Honor.

12           (Foreperson enters courtroom.)

13           THE COURT:  I am going to ask you some questions,

14   but I want to remind you must not tell us how any juror

15   stands, how the vote stands, or anything like that.  Keep

16   that in mind.

17           I gather and see it probably was printed by Juror

18   No. 3 but signed by you that some jurors are upset with

19   Juror No. 3.

20           THE FOREPERSON:  Yes.

21           THE COURT:  Can you tell me in general terms

22   without telling me any juror's position what the concern is?

23           THE FOREPERSON:  The concern is a few things.  The

24   juror interrupts.  The juror says things without thinking.

25   The juror makes comments like that was a stupid thing to

1    say, irritating things, and really doesn't think that well.

2        THE COURT:  Okay.  I think that answers my

3    question, so I am going to let you go back upstairs.

4        (Foreperson leaves courtroom.)

5        THE COURT:  All right, I don't see anything based

6    on those statements which would suggest to me that it would

7    be appropriate to excuse her.  I think we just have a juror

8    who has different views than her fellow jurors and maybe

9    doesn't have the same thought processes as her fellow

10   jurors, but it sounds to me like they are very much

11   deadlocked, so I am going to bring them down again and

12   discharge them.  I just don't see anything else to do.  I

13   will hear from everyone else one more time.

14       MR. STERN:  Apparently there is animosity going on

15   during the deliberations.  I think the foreperson indicated

16   that.  An instruction from the Court asking the jurors to

17   consider each others views politely and with civility and to

18   use that as the framework by which they deliberate may be of

19   some assistance.  Again, in a six-week trial, it seems that

20   at a minimum we should do that.

21       MR. KALOYANIDES:  Your Honor, there was nothing in

22   what Mr. Bennett said that indicated that Juror No. 3 has

23   not participated, has not reviewed the evidence.  It sounds

24   like she may have a lacking in social skills, and she is

25   being rude it sounds like.  That does not affect the

1   deliberations as far as the process.  It's simply a matter

2   that people have been upset with her behavior.  They have

3   deliberated.  They can't now after three notes come to a

4   conclusion.  It's time to let them go.

5       THE COURT:  I agree.  The problem is that I did not

6   take Mr. Bennett's comments to suggest that she is

7   inconsiderate or rude.  I think what he is saying is she

8   just thinks about things in a different manner than the

9   other jurors without going the next step and -- I don't want

10  to ask -- I have to just conclude that they are in fact

11  hopelessly deadlocked.

12      MR. STERN:  But I think he said she was calling

13  other jurors stupid.

14      THE COURT:  I think he said comments about that's

15  stupid -- that she was referring to someone as stupid in

16  deliberating with respect to the opinions of other jurors.

17      MR. STERN:  That may be resolved if the Court asks

18  her -- instructs the jurors in general that they need to be

19  courteous and considerate, and that's the framework under

20  which they should deliberate.  There isn't really much to

21  lose, and if they can't come to a final verdict, they can

22  certainly tell us again.  It doesn't seem we have a lot to

23  lose in this circumstance considering the length of this

24  trial and the efforts they have made to deliberate and their

25  desire to bring to the Court's attention a problem with a

```
1    particular juror.
2           MR. KALOYANIDES:  After three notes that they are
3    deadlocked, it's becoming worse, and to send them back and
4    say try it again --
5           THE COURT:  I agree with you, so I am going to
6    discharge them.
7           Did I ask Mr. Bennett if they were deadlocked?
8           MR. KALOYANIDES:  He specifically responded to the
9    question.  You asked him.
10          (Jury present.)
11          THE COURT:  Good afternoon again.
12          Ladies and gentlemen, I am not going to go through
13   and ask all the long questions.  All of you except Ms. Lewis
14   previously indicated that the jury was hopelessly
15   deadlocked, and I take it you all remain of that opinion.
16          Just raise your hands if you have a different
17   opinion now than before.
18          Ms. Lewis, are you of the opinion that the jury is
19   deadlocked?
20          JUROR LEWIS:  Yes.
21          THE COURT:  Assuming the jury remains composed as
22   it is presently composed, do you believe there is a chance
23   that the jury could reach a verdict?
24          JUROR LEWIS:  No.
25          THE COURT:  Then, ladies and gentlemen, I am going
```

```
 1    to discharge you at this point in time, and you may now

 2    speak about the case if you wish.  I rather expect that the

 3    lawyers on both sides may wish to speak with you.  It's up

 4    to you as to whether or not you wish to speak with them, but

 5    in any event, we want to thank you.

 6              We know this has been a very difficult experience

 7    for all of you.  You have all worked very hard, and we very

 8    much appreciate your efforts.  On behalf of the Court and on

 9    behalf of my colleagues, I want to thank each and every one

10    of you for the many sacrifices you have made in this matter.

11    You are free to go, and you are free to speak or not to

12    speak with counsel in the case.  Thank you.

13              (Jury discharged.)

14              THE COURT:  All right, I will let you guys go.

15              MR. STERN:  Are we going to set a retrial date?

16              THE COURT:  I think we need to.  The only question

17    is -- it can't be May 17 -- well, we have the other case --

18    let's set it for May 17.  I would like to try it in April if

19    we could if I have more time.  I gather counsel have

20    problems in April.  Let's set it for May 17.  I want a

21    status conference earlier.  This time we are going to

22    proceed with some very rigid time limits so this doesn't

23    happen again.

24              THE CLERK:  May 2.

25              THE COURT:  Much earlier than that.  I want them in
```

1      two or three weeks before.

2              THE CLERK:  April 18.

3              THE COURT:  April 18 for a status conference at

4      1:30.

5              MR. KALOYANIDES:  That's fine.

6              THE COURT:  So we will see you here on the 18th.

7              MR. BUELLER:  We intend to renew some of the

8      motions made --

9              THE COURT:  I understand.

10              MR. KALOYANIDES:  Thank you.

11              THE CLERK:  Counsel, I need the exhibits released

12      back to the government.

13              MR. KALOYANIDES:  What about the defense exhibits?

14              THE COURT:  Maynard, you have to get the defense

15      exhibits back to them, too.

16                      *(Proceedings were adjourned.)*

17                              -oOo-

18

19

20

21

22

23

24

25

-oOo-

CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  September 24, 2006


Sharon A. Seffens    9/24/06

SHARON A. SEFFENS, U.S. COURT REPORTER