1                     UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
2                   CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION
3
                            - - -
4                   HONORABLE CHRISTINA A. SNYDER
              UNITED STATES DISTRICT JUDGE PRESIDING
5                           - - -

6
   UNITED STATES OF AMERICA,           )
7                                      )
                   PLAINTIFF,          )
8                                      )
   VS.                                 )   CASE NO:
9                                      )   CR 02-00003(B)-CAS
   KHALED SHOUKHAH,                    )
10                                     )
                   DEFENDANT.          )
11                                     )
   _____)
12

13

14
                 REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                   THURSDAY, JANUARY 12, 2006
16
                     LOS ANGELES, CALIFORNIA
17

18

19

20

21

22               LAURA MILLER ELIAS, CSR 10019
                 FEDERAL OFFICIAL COURT REPORTER
23               312 NORTH SPRING STREET, ROOM 453
                 LOS ANGELES, CALIFORNIA 90012
24                   PH:  (213)620-0890

25

1

2    APPEARANCES OF COUNSEL:

3    ON BEHALF OF PLAINTIFF:

4            DEBRA W. YANG
             UNITED STATES ATTORNEY
5
             BY:  MICHAEL STERN
6            ASSISTANT UNITED STATES ATTORNEY

7            1100 UNITED STATES COURTHOUSE
             312 NORTH SPRING STREET
8            LOS ANGELES, CA 90012

9

10   ON BEHALF OF DEFENDANT SHOUKHAH:

11

12           G. DAVID HAIGH, ESQ.

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                   INDEX

2

3

          PROCEEDINGS                          PAGE

4

5         SENTENCING                           4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    LOS ANGELES, CALIFORNIA; THURSDAY, JAN. 12, 2006; 11:10 A.M.

2                              - - -

3              THE CLERK:  Calling Calendar Item 1.

4              Case No. CR 02-03(B).

5              United States of America versus Khaled Shoukhah.

6              Counsel, please state your appearances.

7              MR. STERN:  Good morning, Your Honor.  Michael

8    Stern on behalf of the United States.

9              MR. HAIGH:  Good morning, Your Honor.  David Haigh

10   on behalf of Mr. Shoukhah who is present at counsel table.

11             THE COURT:  All right.  Good morning, Mr. Haigh.

12             All right.  I think we recessed last time,

13   Mr. Haigh so you could look at the record further.

14             MR. HAIGH:  Actually, it was a two step --

15             THE COURT REPORTER:  I'm sorry, Counsel.  I can't

16   hear you.

17             THE COURT:  You've got to go to the lectern.

18             MR. HAIGH:  As I started to say, it was a two-step

19   probation.  Probation was going to investigate whether or not

20   there was a prior conviction which my understanding from

21   talking to all parties, there was no prior conviction.

22             THE COURT:  There was not.  That's what I have been

23   informed of, also.

24             MR. HAIGH:  The second thing was to attempt to

25   obtain the transcript which we were able to do much to my
```

1    surprise, and hopefully, the probation officer has provided

2    to the Court.  I sent copies to both Mr. Stern and the

3    probation department.

4            THE COURT:  I'm sorry to tell you no one has

5    provided me with a transcript.

6            MR. HAIGH:  Well, with the Court's permission then,

7    can I provide the Court with my copy.

8            THE COURT:  Sure.  You may approach.

9            MR. HAIGH:  And as indicated, I did provide a copy

10   to Mr. Stern.  The Court now has the sole copy in the

11   courtroom; however, I'd ask that it be marked defense next in

12   order.

13           THE COURT:  All right.

14           MR. HAIGH:  I don't know what we're up to at this

15   point.

16           THE COURT:  Okay.  I've looked at it.  Tell me what

17   it means.

18           MR. HAIGH:  All right.  From -- from my reading,

19   Your Honor, and I think I've said this before, I believe it

20   was probably -- to be perfectly candid, probably a mistake on

21   the part of all parties in the case not realizing that the

22   120-day sentence has never been served.  But what it looks

23   like is what happens every day in the state courts, that a

24   new case had come on, there was an existing probation for a

25   misdemeanor, that the new offense would constitute a

1    violation as well as failure to show up to the jail would

2    constitute a violation.

3           Mr. Shoukhah was found in violation and simply

4    reinstated which means no additional sentence was imposed.

5    The original sentence was vacated as a matter of law at the

6    time of reinstatement because at that point, it becomes a

7    simple misdemeanor sentence.  As I said, I'll be candid with

8    the Court, I do not believe that that would have necessarily

9    been the same result if everyone had realized the situation,

10   but it does not matter.  It is a legal sentence imposed by

11   the state judge.

12          As I indicate, the law in California is during the

13   entire time that you're on probation, the Court has the power

14   to re sentence from zero to in this case, since it was a

15   misdemeanor, 365 days in the county jail.  And until that

16   sentence is imposed, it is not a final judgment.

17          In this case, the last pronouncement of judgment --

18   in other words, the reinstatement is a reinstatement.  And

19   quite frankly, even the transcript's a little ambiguous

20   because they're talking about 30 days credit for 30 days

21   served.  Whether that was a concurrent or only on the new

22   case or only on the old case . . .  we know by looking at the

23   records, it appears that the clerk at least counted it as

24   30 days toward the probation that he was on.  But looking at

25   the judge's actual pronouncement of judgment, as I say, it's

```
 1    ambiguous, but it is clear there is no final judgment of

 2    120 days.

 3              So my position remains exactly the same as it has

 4    been throughout, that whether it was by judicial oversight,

 5    whether it was intentional in light of the enormous fine on

 6    this case, in light of, you know, numerous other things, I

 7    can't tell.  As I indicated to the Court, I did leave a

 8    message with defense counsel who does not remember the case

 9    at all.  I obviously then tried to interview the court since

10    I believe the record would be the complete record as far as

11    that's concerned.  So my position remains and the defense

12    position remains as it has been since we first filed our

13    objections in this matter, that there is not a 120-day

14    sentence at the time we come before the Court.  And that is

15    the critical issue at this point.

16              So the upward in the original probation report is

17    incorrect.  And so I think my computation is that when we

18    deal with that, it takes us down to a criminal history 3, I

19    believe, is -- is --

20              THE COURT:  That's where you argued originally.

21              MR. HAIGH:  Right.

22              MR. STERN:  And that's not the government's

23    position, and that's not the position of the Assistant D.A.

24    who deals with these same kind of communications.  Cause I

25    faxed him a copy of the transcript, and he said this is
```

```
 1   exactly what I testified to, that there was an addition of

 2   accounts.  And if the Court looks at the beginning of the

 3   transcript, the state court says, I'm going to add --

 4             THE COURT:  So we're adding a Count 3.

 5             MR. STERN:  Right.  And then the defendant is

 6   sentenced to 30 days on Count 3, and he's then given credit

 7   for the time that he's served on Count 3.  There's not an

 8   indication that the original sentence is vacated.  But as the

 9   Assistant D.A. testified to, Count 3 was in addition to

10   rather than in lieu of the original sentence.  And the

11   Assistant D.A. testified exactly what is -- with what is

12   demonstrated there, that an additional count was added which

13   is Count 3.

14             THE COURT:  All right.

15             MR. STERN:  It seems to be absolutely consistent

16   with what he testified to.  The court didn't go back and

17   change or eradicate the original sentence, but rather it

18   added an additional sentence which is Count 3 but then gave

19   him credit for the 30 days he had already served.

20             THE COURT:  That's what it looks like to me.

21             MR. STERN:  Which means that the original sentence

22   remains.  And as punishment for failing to appear once he was

23   caught, he got an additional 30 days which the judge credited

24   him then because he had already actually served that much

25   time in jail.
```

1          THE COURT:  Well, to put it simply, it is

2    ambiguous, but it seems to me I'm bound -- Mr. Stern's

3    interpretation has more credibility in my mind because there

4    is an added count in this transcript and an imposition of a

5    30-day sentence.  So I am going to find that the criminal

6    history category is a 4 in this case.  Having said that, I am

7    going to, however, give the defendant credit for the 249 days

8    for the same offense.

9          Now, I know Mr. Stern is going to tell me I can't

10   do that because part of his 204 days relates to the probation

11   violation as opposed to the same offense.  I can't really

12   tell that the probation violation is the offense itself, and

13   it seems to me that we are talking about the same crime.

14          So what I propose doing subject to hearing from the

15   defendant and any final argument by everyone is to sentence

16   this defendant to 76 months rather than the 84 requested by

17   the government, but I am going to find that the criminal

18   history category is a 4, that the offense level is the 25 and

19   sentence on that basis.

20          MR. STERN:  May I briefly respond?

21          THE COURT:  Sure.

22          MR. STERN:  The problem with that is that it

23   doesn't recognize that a defendant who commits a new crime

24   while on probation for an old crime should not get those

25   crime punishments to run on top of one another.  I mean, that

1    voids the whole concept of having additional punishment for

2    committing a new crime essentially saying there's no penalty

3    for a violation of your probation.

4           And I think that as a systemic problem when the

5    courts do that, there's no incentive for defendants to

6    refrain from violating their probation and to maintain good

7    behavior on their probation because it doesn't end up hurting

8    them in the end.

9           THE COURT:  Well, I hear your argument, and

10   certainly, I'm sure there are legal scholars who would say

11   that that's a valid argument, and there are others who would

12   say it's not, but the fact of the matter is this.  This

13   record is clouded with certain ambiguities at various terms.

14   There's no doubt that the defendant has provided a great

15   amount of cooperation, but the problem from Day 1 has been

16   the criminal history category, and the fact that he's

17   ineligible for the safety valve.  I think that 76 months is

18   sufficient to punish him, I think that that what's the

19   sentence should be, and that's where I intend to go.

20          But I will hear from Mr. Haigh, and I will hear

21   from Mr. Shoukhah.

22          MR. HAIGH:  Thank you, Your Honor.  Obviously, I

23   will not go over old ground at this point.  We've spent four

24   appearances on the issue of criminal history.

25          THE COURT:  You've made an heroic effort.

1            MR. HAIGH:  Let me talk about the issues we have

2      not yet discussed and put this in context.  I'm not going to

3      reiterate the issues of cooperation because the Court has

4      actually heard testimony concerning that.  The Court is aware

5      that Mr. Shoukhah came in early.  The court is aware that

6      Mr. Shoukhah more than some defendants actually was able to

7      provide information that led to a search warrant and actual

8      seizure so that there actually is some of these products

9      being taken off the street.

10            THE COURT:  He has been given one of the highest

11      credits in the case.

12            MR. HAIGH:  As I say, I'm not trying to go over old

13      ground.  What I do want to address, though, are some things

14      that we have not discussed, and I want to make sure the Court

15      has the various information.  Cause since the Court did not

16      get the transcript, I wonder if some of the things I had

17      provided to the probation department have been provided to

18      the Court.

19            First, I assume the Court has seen the medical

20      records from my client's wife's severe accident where she's

21      still in pain, and she clearly needs her husband at home to

22      help with the raising of the children.  And the Court has

23      commented that there is tragic family circumstances.  There

24      has been apparently in other defendants in this case.

25            There is an additional issue, and I likewise

 1    provided information to the probation officer, and I don't

 2    know if it got to the Court concerning my client's mother's

 3    very feeble heart, that she is supposed to have heart

 4    surgery.  She has postponed the heart surgery cause she's

 5    afraid and does not want to die before her son comes home.

 6    And, once again, I did provide medical information to the

 7    probation officer concerning that.  It was -- and the reason

 8    was not in my documents.  I didn't get it until it was handed

 9    to me here in the courtroom in one of these proceedings so I

10    did not file it as a separate item from me.

11            But within the context of my client's ties to home,

12    that home is in Jordan.  And it is the intention of my

13    client -- and even though he had negotiated an agreement from

14    the government they would at least recommend to immigration

15    that they consider the fact that he cooperated in this case,

16    he has instead decided that he really needs to go home.  And

17    as a result, he is not going to contest deportation.  He will

18    do whatever is in his power to ensure -- I know some courts

19    do a one point downward departure for those defendants who

20    choose not to contest deportation.  I do not know what this

21    Court's policy is in that regard.

22            But I would like to at least point out to the Court

23    to consider what I have called Blakely type information, in

24    other words, things that before were really outside

25    guidelines but now are issues that can be considered by the

1    court in the ultimate 76 months that the Court arrived.

2    Because my client is not a U.S. citizen, he will not be

3    eligible for the 1 year reduction for the drug program.

4    Likewise, because he is not a U.S. citizen, he will not be

5    eligible for a halfway house.

6          And as I'm sure the Court is aware, nearly all

7    federal defendants now are released well short of ultimate

8    sentence, somewhere in between 2, 6 months or more sometimes

9    to a halfway house which for all practical purposes, the way

10   the federal halfway house system works, once you have a job,

11   and once you've spent the initial weekend at the halfway

12   house, you're basically at home, and you're allowed to be at

13   home during the pendency as long as you maintain a job.  And

14   that's another program for which he will not be eligible.

15         And I conflict that -- or contrast that with one of

16   the defendants who has received 84 months but is a U.S.

17   citizen.  He is halfway house eligible.  He was eligible for

18   the drug program.  He will actually be out sooner than

19   Mr. Shoukhah will be on the 76-month sentence the court has

20   tentatively proposed to impose.  Now, obviously pre change in

21   our law, those would be the factors that might justify low

22   end of the sentencing scale but certainly were not departure

23   grounds.

24         Now, of course, they are issues which can go to the

25   ultimate justice of the sentence that the Court chooses to

```
 1    impose.  And I don't want to sound as though in any fashion
 2    defense is saying that 76 months is horribly unjust or
 3    something of that nature.  I understand the huge amount of
 4    time that Mr. Shoukhah was facing when this case began, and I
 5    understand the ultimate sentence, whatever it is, will be
 6    substantially below that originally recommended by probation
 7    and clearly well below what would have been available under
 8    the old guideline system other than because of the 5K.
 9              But I do think now in light of the new sentencing
10    system that the Court is -- you know, the world in which we
11    now live, these factors that before were collateral now
12    become I think at least to some degree more central to the
13    Court's consideration.  Because the reality is totally
14    similar situated defendants, one like my client, a Jordan
15    citizen, and one say a naturalized U.S. citizen, the ultimate
16    sentence is going to be -- sentence in terms of time served
17    is going to be significantly higher for the foreign national
18    than the U.S. citizen.
19              THE COURT:  I understand.  That's always the case
20    in these cases.
21              MR. HAIGH:  But I think now we can start to take
22    that into consideration where before we could not.  And that
23    is the point that I'm trying to make, that from the
24    standpoint of punishment realistically whether someone does
25    60 months, 70 months, 84 months, that's a lot of punishment.
```

1   All right.  I mean, it's not like 240 or something like that,

2   but it's still a lot of punishment.

3          The issue is we punish for a variety of reasons.

4   One is to make sure other people don't do these things and

5   think they can, you know, skate if I can use that term.

6          Also, though, I think we need to take into

7   consideration an issue of a foreign national who is not going

8   to contest deportation and will sign whatever documents need

9   to be signed and will do that with full consent of the court.

10  He will be gone, all right, and he will no longer be a burden

11  on our society should he re offend.  And it's always a

12  concern, and it's certainly a concern.  That's why we have

13  these high levels that we do for those with prior convictions

14  because recidivism becomes a serious issue.

15         But the reality is that Mr. Shoukhah is leaving the

16  country, will not return, will never be able to legally

17  return, and quite frankly, I can't see him ever returning

18  because of the consequences of a return at this time.  And he

19  has a huge family structure in Jordan.  It's not like he's

20  being dumped in a country where he's never lived where he

21  doesn't speak the language where -- you know, like many of

22  the Mexican nationals we have that came to this country in

23  '86, they're as much of a U.S. citizen as I am except for the

24  fact that they were born in Mexico.  This is a totally

25  different circumstance.

1          This is a gentleman who has huge family ties who

2     will be reintegrated into Jordanian society by way of his

3     family.  So that his deportation is a realistic consequence

4     of these offenses.  I don't need to reiterate there what the

5     Court already knows, that the danger to himself and to his

6     family is probably more severe in Jordan than here because

7     the people that he was providing information concerning

8     likewise have ties to Jordan, have families in Jordan where

9     quite frankly, issues of revenge will become significant.

10    And he has done a great deal that would make -- at least tend

11    to make people very upset with him.

12          So these are the reasons why my suggestion has been

13    all along for a sentence close to time served given the fact

14    that at this point with the credits, the Court has

15    acknowledge he's entitled to I believe the total sentence is

16    somewhere in the neighborhood of 55 -- I mean, the total time

17    in right now is around 55 months.  Somewhere in that range.

18    I was going to propose when we came in today that the Court

19    sentence in the 60-month range which I thought was

20    appropriate, all things considered.

21          As I said, I don't know that what I have to say is

22    going to make any difference to the Court since the Court has

23    had a tremendous amount of time to consider this case.  I was

24    joking with the clerk that this is the longest sentencing

25    hearing I have ever been involved in for the reasons that

```
 1    became obvious --

 2              THE COURT:  For very important reasons.

 3              MR. HAIGH:  Yes.  Well, we wanted to get it right.

 4              THE COURT:  That's right.

 5              MR. HAIGH:  Just very simply.

 6              But from the standpoint of criminal justice, from

 7    the amount of cooperation and the fact that he came in very

 8    early, from what he provided, from the whole panoply

 9    including the big negative which is the prior criminal

10    history, I still think a sentence of 60 months in this case

11    knowing --

12              And as I said, this is not a game.  We will sign

13    whatever papers need to be signed to waive deportation.  He

14    will return to Jordan.  As I say, I conceive of no manner in

15    which he would illegally return to this country, and I quite

16    frankly can't see any reason why he would want to return

17    illegally knowing the monumental consequences he would face.

18              So that is my proposal to the Court.  I do think in

19    light of the new sentencing, that is sufficient to ensure a

20    fair and just sentence, that additional incarceration really

21    is excessive in the sense that it is not necessary to ensure

22    that proper punishment takes place in this case in light of

23    all the circumstances.

24              And beyond that, I would submit it to the court.

25              THE COURT:  All right, thank you.
```

 1          Mr. Stern.

 2          MR. STERN:  For defense counsel to say I can't

 3    envision any circumstance in which my client would return

 4    illegally to the United States misses the point.  According

 5    to the probation department report, the defendant's here

 6    illegally now.

 7          THE COURT:  I'm aware of that.

 8          MR. STERN:  So whatever motivated him as motivates

 9    many other people to come to the United States because of the

10    way of life would be a similar motivation after the defendant

11    returns to Jordan for a period of time and decides his life

12    was better in the United States.  Now, whether or not he can

13    come back to the country legally really doesn't seem to be a

14    particularly strong argument as an issue because he's here

15    illegally to begin with.

16          With respect to counsel's argument that other

17    people that are similarly situated are doing the same or less

18    amount of time, that's not accurate.  Because the other

19    people had different criminal histories than this defendant.

20    What distinguishes this defendant in many ways from the other

21    defendants who didn't have any criminal history and had

22    gotten a safety valve was that this defendant has managed to

23    distinguish himself with a long line of criminal activity

24    from the time that he illegally entered the United States,

25    and the Court shouldn't lose sight of that.

1          The Court should also recognize that this motion

2     for a 5K downward departure was filed as one of the earlier

3     motions even though we're actually coming to sentencing

4     later.  So to the extent that we were initially making larger

5     departures based on the Court's first couple of sentences, if

6     the Court would notice, this is one of those type of

7     departures.

8          So we think that 6 levels was actually the

9     appropriate range, but in order to bring the defendant into

10    comity with other defendants that the Court had already

11    sentenced, we then asked the Court for an additional 4 levels

12    off which frankly as we indicated in our brief, we don't

13    think it is justified, but other issues were driving us.  If

14    we were to file this now, we wouldn't be asking for that type

15    of departure.

16         And on top of all this heap of information that

17    I've just mentioned, the Court has also given the defendant

18    credit for more than 200 days based on another violation of

19    law that he received and essentially is giving the defendant

20    more credit.  So to the extent that the Court is looking for

21    a bottom place to land, I think the 76 months should be it.

22         THE COURT:  Okay.  Well, that's really where I come

23    out.  I -- if I take all the things that Mr. Haigh has told

24    me I should consider, the fact that this defendant because

25    he's not a U.S. citizen is going to have a longer time to

1  serve and whatever else, that's one of the reasons that I

2  went to the 249 days.

3          I think it's probably just as clear that 204 of

4  those days are for a violation, and there's ambiguity, but

5  because there's so much ambiguity in this record and so many

6  unique problems, I concluded that the 76 months was

7  sufficient to penalize the defendant for his conduct here.

8          So I'm disinclined to move, but if Mr. Shoukhah

9  wishes to be heard.

10          MR. HAIGH:  I asked him if he wished to be heard,

11  and his indication is no.  He has basically through his

12  actions told the Court everything he wants.

13          THE COURT:  All right.  Then I'm going to proceed

14  to sentence.

15          Okay.  It is ordered that the defendant shall pay

16  to the United States a special assessment of $100 which is

17  due immediately to the Clerk of the Court.

18          The defendant shall comply with General Order No.

19  0105.

20          Pursuant to the Sentencing Reform Act of 1984, it

21  is the judgment of the Court that the defendant, Khaled

22  Shoukhah, is hereby committed on Count I of the Second

23  Superseding Indictment to the custody of the Bureau of

24  Prisons to be imprisoned for 76 months.

25          Upon release from imprisonment, the defendant shall

```
 1    play -- be placed on supervised release for a term of 5 years
 2    under the following terms and conditions.
 3              1.  The defendant shall comply with the rules and
 4    regulations of the U.S. Probation Office and General Order
 5    318.
 6              2.  The defendant shall participate in outpatient
 7    substance abuse treatment and submit to drug and alcohol
 8    treating as instructed by the probation officer.  The
 9    defendant shall abstain from using illicit drugs, using
10    alcohol and abusing prescription medications during the
11    period of supervision.  Tests shall be limited to 8 tests a
12    month.
13              3.  As directed by the probation officer, the
14    defendant shall pay all or part of the costs for defendant's
15    drug treatment to the aftercare contractor during the period
16    of community supervision.
17              Pursuant to Title 18 United States, Code 3672, the
18    defendant shall provide payment and proof of payment as
19    directed by the probation officer.
20              4.  During the period of community supervision, the
21    defendant shall pay the fine -- I'm sorry, shall pay the
22    special assessment in accordance with this -- with this
23    judgment's orders pertaining to such payment.
24              5.  The defendant shall comply with the rules and
25    regulations of the Bureau of Immigration and Customs
```

1    Enforcement and if deported from this country either

2    voluntarily or involuntarily, not reenter the United States

3    illegally.

4          The defendant is not required to report to the

5    probation office while residing outside the United States.

6    However, within 72 hours of release from any custody or any

7    reentry to the United States during the period of court

8    ordered supervision, the defendant shall report for

9    instructions to the United States Probation Office located

10   at:

11         The United States Courthouse

12         312 North Spring Street

13         Room 600

14         Los Angeles, Ca.  90012

15         The defendant shall obtain or possess any driver's

16   license, social security number, birth certificate, passport

17   or any other form of identification in any name other than

18   the defendant's true, legal name without the prior written

19   approval of the probation officer.  Further, the defendant

20   shall not use for any purpose or in any manner any name other

21   than his or her true, legal name.

22         The defendant shall submit a DNA sample if

23   requested to do so.

24         I think in light of the sentence, there is a

25   limited right to appeal under the plea agreement.  And if you

1    determine that it is appropriate to appeal, then you have

2    10 days in which to do so, and if you cannot afford counsel,

3    counsel will be provided to you.

4            Do you have any further requests, Mr. Haigh?

5            MR. HAIGH:  Your Honor, I would ask he be housed

6    locally in Southern California during the remainder of the

7    sentence.

8            THE COURT:  I will make that recommendation, also.

9            MR. HAIGH:  And just for the record, Your Honor, I

10   have discussed the issue of appeal with my client.  I believe

11   there is no viable appeal in light of the plea agreement, and

12   I have advised my client I do not intend to file an appeal

13   for him.

14           THE COURT:  All right.

15           Mr. Stern, are there counts to be dismissed?

16           MR. STERN:  If there are any counts, I would move

17   to dismiss them.

18           THE COURT:  All right.  They shall be dismissed.

19           MR. STERN:  Thank you, Your Honor.

20           THE COURT:  Okay.  Thank you, everyone, for a very

21   thorough and thoughtful job.

22           THE CLERK:  This court's in recess.

23           (Proceedings were concluded at 11:35 a.m.)

24

25

1

2                        CERTIFICATE OF REPORTER

3

4     COUNTY OF LOS ANGELES        )

5                                  )  SS.

6     STATE OF CALIFORNIA          )

7

8     I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

9     STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

10    DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

11    FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

12    FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

13    FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

14    FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

15    OF MY STENOGRAPHIC NOTES.

16

17

18    DATE: _____

19

20    _____

21    LAURA MILLER ELIAS, CSR 10019

22    FEDERAL OFFICIAL COURT REPORTER

23

24

25